# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

CMH HOMES, INC. and CMH
MANUFACTURING, INC.,

      Plaintiffs,

v.                                     No. Civ. 17-00835 JCH-LF

LON W. SEXTON and HEATHER SEXTON,

      Defendants.

LON SEXTON,

      Plaintiff,

v.                                       No. Civ. 17-00956 JCH-LF

CMH HOMES, INC. d/b/a/ CLAYTON
HOMES d/b/a OAKWOOD HOMES OF
ALBUQUERQUE, CMH MANUFACTURING,
INC., and VANDERBILT MORTGAGE AND
FINANCE, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On April 15, 2019, CMH Homes, Inc., ("CMH Homes"), CMH Manufacturing, Inc.

("CMHM"), and Vanderbilt Mortgage and Finance, Inc. ("VMF"), collectively "Defendants," filed

a Motion to Compel Arbitration and Stay All Proceedings (ECF No. 35). Defendants ask the Court

to compel Plaintiff Lon Sexton to resolve his claims against CMH Homes and CMHM in

arbitration and to stay all of his claims against VMF.[1] Plaintiff Sexton opposes the motion. The

---

[1] As explained more thoroughly *infra*, Lon Sexton is the plaintiff and CMH Homes, CMHM, and VMF are defendants
in Case No. 17cv956 JCH-LF. CMH Homes and CMHM are plaintiffs and Mr. Sexton is the defendant in Case No.
17cv835 JCH-LF. The cases are consolidated. In their motion to compel, CMH Homes, CMH, and VMF refer to

Court, having considered the motion, briefs, evidence, applicable law, and otherwise being fully informed, concludes that the provisions in the arbitration agreement requiring Plaintiff to pay half the arbitrator fees are unconscionable and unenforceable and must be severed from the agreement. Upon severing those provisions, the Court will grant the motion to compel arbitration and stay all proceedings.

## I.    BACKGROUND

Lon Sexton purchased a model manufactured home from CMH Homes in Albuquerque, New Mexico on April 14, 2016, which was manufactured by CMHM. *Compare* Compl. ¶ 8, ECF No. 1, *with* Answer ¶ 8, ECF No. 9.[2] CMHM manufactured the home in Texas and transported it by interstate roadways to CMH Homes d/b/a Oakwood Homes in New Mexico. McCann Decl. ¶ 4, ECF No. 1-2. Mr. Sexton completed the paperwork for the sale and financing of the home during a single visit at the Oakwood Homes dealership with dealership representatives. Sexton Decl. ¶ 5, ECF No. 37 at 16 of 27. Mr. Sexton entered into a Consumer Loan Note and Security Agreement ("Loan Contract") with VMF. Loan Contract, 1:17-cv-00956-JCH-LF, ECF No. 9-1. CMH Homes and VMF are subsidiaries of the same parent company with business and financial relationships with one another, facts disclosed to Mr. Sexton in the Affiliated Business Arrangement Disclosure Statement. *See* Pl.'s Ex. 5, ECF No. 37 at 21 of 27.

In connection with the home purchase transaction, Mr. Sexton entered into a Binding Dispute Resolution Agreement (the "Arbitration Agreement") with CMH Homes. *Compare* Compl. ¶ 9, ECF No. 1, *with* Answer ¶ 9, ECF No. 9. As relevant here, the Arbitration Agreement provides:

> The Parties (defined below) agree to resolve all disputes pursuant to the terms of this Binding Dispute Resolution Agreement (the "Agreement"). The Parties are

themselves collectively as "Defendants" so the Court herein will do likewise and will refer to Mr. Sexton as "Plaintiff."
[2] Citations to electronic court filing numbers herein refer to case 1:17-cv-835-JCH-LF, unless otherwise noted.

defined as the buyer (whether one or more) who signs below (referred to hereinafter as "Buyer") and CMH Homes, Inc., its subsidiary(s) (e.g. CMH of KY, Inc.), and their/its agents, assignees, successors in interest, and employees (collectively referred to as "Seller"). Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of this Agreement, who include the following additional parties: (i) manufacturers of the Home (defined below);… (Buyer, Seller and Beneficiaries may be referred to herein as "Party" or "Parties").

Arbitration Agreement 1, ECF No. 1-1 at 7 of 10.

By its terms, the Arbitration Agreement applies:

to all-pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property … sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity, and enforceability of the Contract (collectively hereinafter referred to as the "Claim" or "Claims").

*Id.*

The Arbitration Agreement states that it is mandatory that all claims must be submitted first to mediation with a mutually agreed to mediator. *Id.* If, however, the parties cannot agree on a mediator, mediation would shall be through "the American Arbitration Association ('AAA') under its Home Construction Arbitration Rules and Mediation Procedures in effect at the time Mediation is requested (the 'Rules')." *Id.* According to the Arbitration Agreement, if the parties do not resolve their dispute in mediation, they agree to binding arbitration. *Id.*

Excluded from mandatory mediation or binding arbitration, however, are "any disputes

arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling." *Id.* Such disputes were excluded from the definition for "Claim" or "Claims." *Id.*

Regarding fees and costs, the agreement states that the fees and costs shall be paid in accordance with this agreement and the Rules. *Id.* at 8 of 10. According to the agreement, the buyer and beneficiaries may request that the arbitration administrator reduce or waive fees or that the seller voluntarily pays an additional share of fees and costs, based on each party's financial circumstances or the nature of the claim. *Id.* The request that the seller pays, however, does not obligate the seller to pay. *Id.* The agreement additionally states: "Unless inconsistent with applicable law or the Rules, the Parties will pay for their own arbitration costs (including fees and/or expenses of their own attorneys, experts, and witnesses), regardless of which party prevails in the arbitration." *Id.*

Mr. Sexton was not given an opportunity to negotiate the terms of the Arbitration Agreement. Sexton Decl. ¶ 6, ECF No. 37 at 16 of 27. Nor was he provided a copy of the Arbitration Agreement. *Id.* ¶ 7.

Counsel for Mr. Sexton sent a letter to Defendants dated July 14, 2017, informing them that he revoked his acceptance of the home and cancelled the contract for the home because of serious defects in the home, including water leaks resulting in dangerous mold growths. *See* Letter, ECF No. 37 at 17-18 of 27. Counsel stated that Mr. Sexton would no longer make payments to VMF because, pursuant to the contract, VMF, as the holder of the contract, is subject to all claims and defenses that Mr. Sexton could assert against the seller of the home. *Id.* at 18 of 27. Counsel also notified Defendants that they intended to file suit if they did not receive a satisfactory response within a week of receipt. *Id.* at 19 of 27. According to the Truth in Lending Disclosure, Mr. Sexton's monthly payment due to VMF was $650.25. Defs.' Reply, Ex. 1, ECF No. 38-1.

On August 15, 2017, CMH Homes and CMHM filed a Complaint for Order to Compel Arbitration against Lon and Heather Sexton, seeking a court order compelling them to arbitrate all claims and disputes between them. Compl. 1, ECF No. 1.[3] The next day, Lon Sexton filed suit against CHM Homes, CMHM, and VMF in state court, asserting that they sold him a severely defective manufactured home and stood by as it developed a dangerous mold infestation. Compl., 1:17-cv-00956-JCH-LF, ECF No. 1-1 at 1. He asserts claims for breach of warranty, revocation of acceptance, breach of contract, breach of the covenant of good faith and fair dealing, violation of the New Mexico Unfair Practices Act ("NMUPA"), N.M. Stat. Ann. § 57-12-2(D)-(E), violation of the Manufactured Housing Act ("NMMHA"), N.M. Stat. Ann. § 60-14-19(C), fraud, negligence, and strict products liability against Defendants generally. *See id.* at 8-12. In addition to damages and among other relief, Mr. Sexton seeks declaratory relief that VMF is liable for all damages awarded for Defendants' conduct, up to the amount payable under the contract. *Id.* at 12. Defendants removed Mr. Sexton's case to federal court, *see* Notice, 1:17-cv-00956-JCH-LF, ECF No. 1, whereupon after the filing of an unopposed motion to consolidate, the Court consolidated the case with this one, *see* Order, ECF No. 15. Defendants subsequently filed a motion to compel arbitration of the claims between Mr. Sexton and CHM Homes and CMHM and to stay all proceedings in this case.

## II.     STANDARD

The Federal Arbitration Act ("FAA") makes an agreement to arbitrate in a contract evidencing a transaction involving commerce "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "provides two parallel devices for enforcing an arbitration agreement:  a stay of litigation in any

---

[3] Pursuant to a joint motion to dismiss (ECF No. 40), this Court dismissed Heather Sexton from this case without prejudice. *See* Order, ECF No. 41.

case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Under § 4 of the FAA, a court may order the parties to arbitrate upon determining that the making of the arbitration agreement or the failure to comply therewith is not in issue. 9 U.S.C. § 4.

Congress's purpose in enacting the FAA was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Federal policy requires arbitration unless the arbitration agreement is not part of a contract evidencing interstate commerce or is revocable upon grounds for the revocation of any contract. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997) (quoting *Perry v. Thomas*, 482 U.S. 483, 489 (1987)). The FAA has created a body of federal substantive law establishing and regulating the duty to enforce arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). A court must enforce an arbitration agreement according to its terms. *Lamps Plus, Inc. v. Varela*, __ U.S. __, 139 S.Ct. 1407, 1415 (2019). Generally, courts rely on state contract principles to construe those terms, but the FAA preempts state law "to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA. *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)).

Arbitration is based on consent, not coercion. *Lamps Plus*, 139 S.Ct. at 1415. The existence of an arbitration agreement is a threshold matter that must be established before the FAA applies. *See Avedon*, 126 F.3d at 1287. Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assoc., Inc. v. Casarotto*,

517 U.S. 681, 687 (1996)). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement. *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

On a motion to compel, the court must give the party opposing arbitration the benefit of all reasonable doubts and inferences. *Hancock v. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012). When there are no genuine issues of material fact regarding the agreement to arbitrate, the court may decide the arbitration issues as a matter of law. *See id.*; *Avedon*, 126 F.3d at 1283. The framework is similar to summary judgment practice: the moving party bears the burden of showing the arbitration agreement applies to the non-moving party; and if that burden is met, the non-moving party may attempt to rebut that showing with evidence establishing a genuine dispute as to whether the arbitration agreement applies. *Hancock*, 701 F.3d at 1261.

## III.    ANALYSIS

As an initial matter, Defendants assert that the sales contract evidences interstate commerce, which Mr. Sexton does not dispute. Indeed, the undisputed facts show that CMHM manufactured the home in Texas and shipped the home via interstate roadways to New Mexico. *See* McCann Decl. ¶ 4, ECF No. 1-2. The Court thus determines the interstate commerce element has been satisfied as a matter of law.

Nor does Plaintiff dispute the existence of an agreement to arbitrate. He argues, instead, that the arbitration agreement does not apply to the parties' dispute, imposes unconscionable costs on Mr. Sexton, and is unenforceable. Plaintiff asserts that the Consumer Credit Protection Act prohibits arbitration of his claims, which all arise out of his loan transaction.

### A.  Consumer Credit Protection Act and the exclusion clause

The Dodd-Frank Wall Street Reform and Consumer Protection Act, among other things, amended the Truth in Lending Act ("TILA") to add the following prohibition:

> *No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling* of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims *arising out of the transaction*.

*See* Pub. L. No. 111-203, § 1414 (codified at 15 U.S.C. § 1639c(e)(1)) (emphasis added). The implementing regulations forbid a "contract or other agreement for a consumer credit transaction secured by a dwelling" from including terms requiring arbitration "to resolve any controversy or settle any claims arising out of the transaction." 12 C.F.R. § 1026.36(h)(1).

The party opposing arbitration has the burden to show that Congress intended to preclude a waiver of judicial remedies for the rights at issue. *See Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). In considering Congressional intent, a court should examine the statute's text, legislative history, and whether an inherent conflict exists between arbitration and the statute's underlying purposes. *See id.*

Plaintiff argues that this controversy arises out of his lawful rescission of the consumer credit transaction, and thus § 1639c(e)(1) precludes arbitration of his claims. Because the sale and financing of the home all occurred and were negotiated during a single transaction, Plaintiff contends that his cancellation of the resulting contract as against all Defendants arises out of that single transaction and is not subject to arbitration. Defendants disagree that the provision prohibits inclusion of an arbitration provision in a sales contract with a retail seller. Instead, relying on the text of § 1639c(e)(1) and its implementing regulations, they assert that § 1639c(e)(1) only prohibits arbitration provisions in residential mortgage loans, extensions of credit under an open end consumer credit plan, or contracts or other agreements for a consumer credit transaction secured

by a dwelling.

There is little authority construing § 1639c(e)(1)'s or § 1026.36(h)(1)'s scope. The text of the statute clearly precludes arbitration clauses in residential mortgage loans and in open end consumer credit plans secured by a dwelling. The question, however, is whether the preclusion of arbitration for claims "arising out of the transaction" is limited to disputes concerning the credit transaction or if it more broadly applies to a sales transaction that occurs at the same time the loan is executed and for which the subject of the sale is the collateral for the loan. Had Congress intended to include in the prohibition disputes arising from the contemporaneous purchase of the residence, it could have more clearly stated so. The language instead indicates that the "transaction" is limited to the credit transaction itself.

As for the legislative history, that the provision was included in the TILA suggests that its purpose was limited to the credit transaction, as distinct from the sales transaction. *See* 78 FR 11280-01, 11286 (2013) (discussing that Congress enacted TILA to better inform consumers about cost of credit and one of TILA's purposes is to provide meaningful disclosure of credit terms to enable consumers to compare credit terms). The Consumer Financial Protection Bureau also has construed § 1639c(e)(1) as limited to the credit transaction documents. *See* 78 FR 11280-01, 11388 ("to prevent any misunderstanding that the prohibition applies to agreements that are not part of the credit transaction, the Bureau is replacing the phrase 'contract or agreement in connection with a' consumer credit transaction with the phrase 'contract or other agreement for' a consumer credit transaction."). Finally, Plaintiff has not shown an inherent conflict between permitting arbitration for the claims arising from the sales contract and § 1639c(e)(1)'s prohibition on arbitration for the distinct claims arising from the credit agreement. The Court is therefore not convinced that Congress intended to preclude a waiver of judicial remedies for the claims at issue here against

CMH Homes and CMHM.

Plaintiff also argues that the terms of the Arbitration Agreement's exclusion provision preclude arbitration of his claims because it broadly excludes claims "arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling." Plaintiff cites New Mexico cases stating the terms "arising out of" are broad, general and comprehensive terms. *See K.L. House Const. Co., Inc. v. City of Albuquerque*, 1978-NMSC-025, ¶¶ 6-8, 576 P.2d 752 (noting that language directing all claims and disputes "arising out of, or relating to, this Contract" is "broad and general" and should be "given broad interpretation unless the parties themselves limit arbitration to specific areas or matters"); *Baca v. New Mexico State Highway Dept.*, 1971-NMCA-087, ¶ 14, 486 P.2d 625 (stating words "arising out of" in insurance contract are "very broad, general and comprehensive terms").

The arbitration clause describing the scope of the arbitration agreement, however, also contains the broad term "arising under" when it states it applies:

> to all-pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein*, arising out of or relating to* (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home …

Arbitration Agreement, ECF No. 1-1 at 7 of 10 (emphasis added). The scope clearly applies to contract, warranty claims, and tort claims arising out of and relating to the sale of the home. While the exclusion provision also contains the "arising out of language," it is more limited to the type of contract intended: "any contract or any other agreement *for a consumer credit transaction secured by a dwelling*." *Id.* (emphasis added). The exclusion mirrors the restriction in § 1639c(e)(1) and unambiguously is limited to disputes originating from the credit transaction. *See*

*Baca*, 1971-NMCA-087, ¶ 14 (stating that "arising out of" is "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from'").

For the foregoing reasons, the Court concludes that neither federal law nor the terms of the exclusion provision preclude arbitration of Plaintiff's claims against CMH Homes and CMHM. The Court finds that the parties agreed to submit any claims of Plaintiff against CMH Homes and CMHM arising from the purchase of the home to arbitration.

### B. Cost-sharing provisions

Plaintiff next argues the agreement to arbitrate imposes costs on him that would create an extreme financial hardship, and it thus unconscionable and unenforceable. A contract term is substantively unconscionable if it is "grossly unreasonable" and against public policy. *Cordova v. World Finance Corp. of NM*, 2009-NMSC-021, ¶ 31, 208 P.3d 901. "[A]greements which require the arbitration of statutory claims are only enforceable under the FAA so 'long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Sanchez v. Nitro-Lift Technologies, L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014) (quoting *Gilmer*, 500 U.S. at 28). By submitting statutory claims to arbitration, a plaintiff does not lose his statutory substantive rights, but rather submits them to resolution in an alternative forum. *Id.* (citing *Gilmer*, 500 U.S. at 26).

The Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000). Although the Supreme Court declined to decide how detailed the showing of prohibitive expense must be to satisfy the party's burden, it clarified that the party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the

likelihood of incurring such costs. *Id.* at 92.

According to AAA's rules for Level 3 disputes (disputes above $75,000), the homeowner and builder share the costs of the initial filing fee ($550 for the homeowner/$1,525 for the builder), case service fee if the case is scheduled for a hearing ($100 for the homeowner/$300 for the builder), and arbitrator compensation ($900 for a one-day hearing by the homeowner/$900 for the builder). *See* Pl.'s Ex. 6 at 22-24 of 27. The rules provide that "AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." *Id.* at 22 of 27. Witness and expert expenses are borne by the respective party and all other expenses, including travel expenses of the arbitrator and witnesses, are borne equally by the parties, "unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." *Id.*

Plaintiff relies on *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 & n.4 (10th Cir. 1999), for his argument that high arbitration costs and fees render the agreement unconscionable. In *Shankle*, the Tenth Circuit refused to enforce an arbitration agreement that imposed costs of $1,875 to $5,000 for half of the arbitrator's fees on an employee suing under federal anti-discrimination laws. *See id.* at 1234-35. The *Shankle* court noted that the plaintiff "could not afford such a fee, and it is unlikely other similarly situated employees could either." *Id.* at 1234-35. Although in *Shankle*, unlike here, the employee remained liable for the fees even if the employer was willing to advance the fees, the Tenth Circuit nonetheless rejected the employer's argument that the agreement should be enforced because of the *possibility* that an arbitrator could shift fees by awarding them as costs if the employee prevailed. *See id.* at 1234 n.4. The Tenth Circuit noted that "it is unlikely that an employee in Mr. Shankle's position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing

those fees in order to access the arbitral forum." *Id.* The Tenth Circuit explained that the agreement put the employee in between a rock and a hard place because he could not use a judicial forum, but the prohibitive cost substantially limited the use of the arbitral forum. *Id.* at 1235. Because the "result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws," it held the agreement unenforceable under the FAA. *Id.*

Defendants argue that *Shankle* is based on the "effective vindication doctrine," which they contend was unequivocally rejected by the Supreme Court in *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013). In *American Express*, the Supreme Court held that a contractual waiver of class arbitration is enforceable under the FAA even when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery. *See id.* at 231, 235-36. The Supreme Court examined the "effective vindication" exception, which originated as dictum in *Mitsubishi Motors*, wherein the Court had expressed willingness on public policy grounds to invalidate arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies. *Id.* at 235 (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19). The Supreme Court explained that the exception would cover an arbitration agreement provision forbidding the assertion of certain statutory rights, but "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.* at 236 (italics in original). Again, in dicta, the Supreme Court acknowledged that the effective vindication exception "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* (quoting *Green Tree*, 531 U.S. at 90).

Following *American Express*, the Tenth Circuit has continued to apply *Shankle* and the effective vindication doctrine where arbitration fees could preclude a litigant from effectively

vindicating his federal statutory rights in the arbitral forum. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377-81 (10th Cir. 2016) (relying on *Shankle* in Fair Labor Standards Act case); *Sanchez*, 762 F.3d at 1150 (remanding to district court to determine effect of cost-shifting provision in arbitration clause in light of *Shankle* and *Green Tree*). The Tenth Circuit in *Nesbitt* discussed the *American Express* case, citing its dicta, and then applied *Shankle*.

This case involves the vindication of state law rights, including state statutory rights. Although the parties have primarily relied on federal law on the cost-sharing issue, the question is whether the New Mexico Supreme Court likewise recognizes the "cost deterrent" defense. Plaintiff relies on *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, 188 P.3d 1215, for the proposition that New Mexico law refuses to enforce contracts that strip statutory remedies. In *Fiser*, the plaintiff filed a putative class action alleging state law claims for, among other things, breach of contract, breach of warranty, bad faith, and violation of the NMUPA. *Id.* ¶ 2. Defendant moved to compel arbitration based on an agreement that included a ban on proceeding on a class-wide basis. *Id.* ¶ 4. The New Mexico Supreme Court held "that, in the context of small consumer claims that would be prohibitively costly to bring on an individual basis, contractual prohibitions on class relief are contrary to New Mexico's fundamental public policy of encouraging the resolution of small consumer claims and are therefore unenforceable in this state." *Id.* ¶ 1.

Subsequently, the United States Supreme Court held that the FAA preempts States from conditioning the enforceability of arbitration agreements on the availability of class-wide arbitration procedures. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 352 (2011). While *Concepcion* has put into doubt the continued viability of the specific holding in *Fiser*,[4] the analysis

[4] *See Felts v. CLK Management, Inc.*, Nos. 33,011, 33,013, 2012 WL 12371462, ¶ 17 (N.M. Aug. 23, 2012) (unpublished decision) ("While *Concepcion* does raise legitimate questions as to the further viability of this Court's *Fiser* opinion, we decline to reach the issue today because it would be purely advisory.").

in *Fiser* concerning New Mexico public policy nonetheless indicates that the New Mexico Supreme Court would apply the effective vindication doctrine to cost-sharing arbitration with prohibitively high fees. The *Fiser* court stated that "New Mexico policy strongly supports the resolution of consumer claims," relying on the NMUPA, *Fiser*, 2008-NMSC-046, ¶ 9, and fundamental New Mexico policy is to provide "consumers a mechanism for dispute resolution," *id.* ¶ 10. Citing *Mitsubishi Motors*, it explained that a prohibition on class relief resulting in "no meaningful alternative for redress of injury certainly does not provide for effective vindication of rights." *Id.* ¶ 15. Consequently, even though *Concepcion* placed the holding in doubt as to class relief prohibitions, the New Mexico Supreme Court in *Fiser* indicated its approval of the effective vindication doctrine in which a party's arbitral forum for resolving statutory claims will be enforceable so "long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637).[5] Moreover, *Concepcion* did not overturn the *Fiser* court's analysis of New Mexico public policy. Under New Mexico law, a contract is substantively unconscionable when the contract terms are contrary to public policy. *State ex rel. King v. B & B Investment Group, Inc.*, 2014-NMSC-024, ¶ 32, 329 P.3d 658.

Turning to the application of the effective vindication doctrine to the shared arbitrator costs at issue here, Plaintiff asserts that AAA, whose rules the agreement states the parties must follow, imposes unreasonable costs. Plaintiff points to as exorbitant the filing fee of $550-$1,000, the case service fee of $100-$150, and hourly rates for an arbitrator. *See* Pl.'s Ex. 6, ECF No. 37 at 24 of 27 (fees vary depending on whether claim is between $75,000 to $300,000 or above $300,000).

---

[5] *See also Peavy v. Skilled Healthcare Group, Inc.*, No. A-1-CA-35494, 2018 WL 5994222, ¶ 16 (N.M. Ct. App. Oct. 22, 2018) (unpublished opinion) (rejecting defendants' argument that paying arbitrators would be cost-prohibitive to justify the collections exemption in the arbitration contract because defendants had burden, yet they failed to present evidence regarding the costs of hiring arbitrators).

These fees must be paid in advance of the arbitration hearing. *Id.* at 22 of 27. Plaintiff contends this case will require a 10-day trial, after which the arbitrator will require considerable time and expense to set forth findings and conclusions of law. Using a $250 hourly fee for a 10-day, eight-hour trial plus another eight-hour day to prepare the ruling, Plaintiff asserts the fee could be $22,000, without including other costs and pretrial arbitrator time. Plaintiff estimates his portion is likely to be at least $12,500. Plaintiff compares that to the state court filing fee of $282, including jury demand. Although he acknowledges the agreement allows the arbitrator to reduce his costs, he contends the discretionary nature provides no guarantee that he will not face outrageously burdensome fees.

Plaintiff submitted an affidavit detailing his financial hardships. He is the sole breadwinner for his wife and four children, and he makes $36.08 per hour. Sexton Aff. ¶¶ 9-10, ECF No. 37 at 16 of 27. His gross income is approximately $2,900 every two weeks, and after taxes, insurance, and other items, he nets $1,800 every two weeks. *Id.* ¶¶ 11-12. After his expenses for gas, food, clothing, and other necessities, he only sets aside a few hundred dollars a month for savings. *Id.* ¶ 13. Other than his "modest" 401K, he has virtually no savings and a balance of just over $2,000 in his checking account. *Id.* ¶ 14.

Defendants present little evidence to contradict Plaintiffs' assertions of financial hardship. Instead, Defendants argue that Plaintiff has not made his $650.25 monthly payment on the manufactured home in 22 months, so he should have at least $14,305.50 in savings, exceeding his own estimate of the projected arbitration costs. The manufactured home and whether Defendants are entitled to the payments, however, are the subjects of Plaintiff's lawsuit, so while Plaintiff may have "saved" those costs, he does not yet know whether those "savings" are his own or if he will ultimately have to make those payments. The Court will thus not consider those as "savings" in

considering whether he can afford the arbitration costs.

Defendants also argue that Plaintiff is in control of his case, so he does not need to take 10 days to prove it. Nevertheless, in the Joint Status Report, the parties estimated the trial would require 10 days, so the Court will use that estimate as a starting point. *See* 1:17-cv-00956-JCH-LF, JSR 26, ECF No. 18. The filing fee and case service fee range from $650-$1,150. Those costs are not prohibitively high in comparison to court fees in the judicial forum. A party demanding a jury must pay a non-refundable jury fee of $150.00 for a 6-person jury, plus $150.00 for each additional day the attendance of the jury is required for trial. NMRA 1-038(C). Jury fees are taxed as part of the costs against the party losing the case. NMRA 1-038(H). The Second Judicial District Court also imposes a $132.00 fee for filing a civil case. *See* Second Judicial District Court, https://seconddistrictcourt.nmcourts.gov/court-fee-schedule.aspx (last visited February 12, 2020). For a ten-day trial, the filing fees and jury costs amount to $1,632.00, more than the filing and case service fees for arbitration.

Arbitrator compensation, however, is not required in a judicial forum and those fees make the arbitral forum prohibitively expensive to Plaintiff. Using a $250 hourly fee for the arbitrator (as Plaintiff proposes based on an attorney hourly fee that has been applied in this district for an 8-hour day), results in $2,000 for each additional hearing day. That amount may be at the low-end based on the Court's research of market-value hourly fees paid to attorneys in this district. *See, e.g., Daniel & Max, LLC v. BAB Holding Company, LLC*, Civ. No. 17-173 GJF/GBW, Mem. Op. and Order 4 (filed August 20, 2019) (finding hourly rates of $450 and $190 reasonable for attorneys of varying experience in this market area and discussing another case awarding $350 hourly fees). Plaintiff's portion thereof, at the low-end estimate, is $1,000 for each hearing day, and likely at least an additional $1,000 for the arbitrator to prepare a ruling. Plaintiff's portion for

a ten-day hearing and one-day to prepare the ruling is $11,000, without accounting for his share of travel and other expenses of the arbitrator and witnesses, as required by the AAA Rules. Although a 10-day arbitration hearing may be longer than necessary to present the case, even a week-long arbitration hearing would impose approximately $6,000 in fees and costs on Plaintiff who has virtually no savings. Plaintiff has shown those costs are prohibitively high for a person in his financial situation.

Defendants nevertheless point out that Plaintiff will have to retain a medical expert to support his claims, and that he has already engaged an engineering expert. Plaintiff would incur those potential costs, however, in both the arbitral and judicial forum. The case upon which Defendants rely, *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001), focuses not on the total costs of litigation, but rather "upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Id.* at 556. Expert fees that would be borne in both forums does not aid the Court's analysis of the cost differential. The arbitral fees are what create the large cost differential in this case.

Although an arbitrator has the authority to reduce or eliminate those fees, it is not certain that an arbitrator will not impose those fees. The Tenth Circuit in *Shankle* and *Nesbitt* have rejected similar arguments that a plaintiff has failed to satisfy his burden on the effective vindication issue because of the mere possibility of deferred or reduced arbitration fees. *See Nesbitt*, 811 F.3d at 378-79 (relying on *Shankle*). The Tenth Circuit quoted with approval the following explanation from the Sixth Circuit:

> [i]n many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration.

*Id.* (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 665 (6th Cir. 2003)).

For all the foregoing reasons, Plaintiff has satisfied his burden of showing financial hardship and that the cost-sharing provisions of the arbitration clause would prevent effective vindication of his statutory claims. *Cf. Nesbitt*, 811 F.3d at 375, 379 (rejecting defendants' argument that plaintiff failed to meet her burden of showing arbitration costs would prevent her from effectively vindicating her statutory rights where plaintiff estimated she would likely incur between $2,320.50 and $12,487.50 in costs paying for arbitrator's time and her affidavit established she could not afford those costs); *Shankle*, 163 F.3d at 1234-35 (holding that plaintiff could not afford to pay arbitrator between $1,875 and $5,000 to resolve his federal anti-discrimination claims, so arbitration agreement was unenforceable). Accordingly, the provisions of the agreement that mandate Plaintiff may half the arbitrator compensation are unconscionable and unenforceable.

Finally, Plaintiff suggests the arbitration agreement's cost-sharing provision strips him of his statutory remedies because the NMUPA and NMMHA provide for an award of attorney's fees and costs to prevailing parties. Defendants correctly point out that the language in the Arbitration Agreement anticipates and exempts each party from paying for each parties' own costs when "inconsistent with applicable law." Arbitration Agreement, ECF No. 1-1 at 8 of 10. Additionally, under the agreement, the "Arbitrator shall not have the power to depart from substantive law, including due process principles, in connection with an award." *Id.* Consequently, should Plaintiff prevail on one of his statutory claims with a fee-shifting provision, the arbitrator would be bound by substantive law to award attorney's fees and costs to Plaintiff.[6]

---

[6] Plaintiff makes a passing reference to the agreement being unconscionable "in light of CHM's one-sided preservation of its own right to pursue foreclosure of the home in Court." Pl.'s Resp. 9, ECF No. 37. Plaintiff offers no case authority in support of his position that limiting foreclosure claims to a judicial forum renders the arbitration agreement

### C.  Severability

When a provision is unconscionable and unenforceable, the court must determine the appropriate remedy: refuse to enforce the entire contract, enforce the remainder of the contract without the unconscionable term, or limit the application of the unconscionable term to avoid an unconscionable result. *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 15, 68 P.3d 901. Here, the Arbitration Agreement contains a severability clause:

> If it is determined that any paragraph or provision in this Agreement … is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other paragraphs and provisions of this Agreement and the remainder of this Agreement shall continue in full force and effect as if the severed paragraph or provision had not been included.

Arbitration Agreement, ECF No. 1-1 at 9 of 10. The unconscionable provision regarding cost-sharing of arbitrator fees can be severed from the agreement, avoiding the unconscionable result. Severability of the provision is aligned with the intent of the parties as reflected by the clear language of the severability clause. The Court will therefore sever from the Arbitration Agreement the provisions that, when construed together with the Rules, mandate Plaintiff share in the arbitrator compensation.

### D.  Stay of proceedings

Defendants seek a stay of Plaintiff's claims against VMF, which they acknowledge are not subject to arbitration. According to Section 3 of the FAA, the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Court will refer Plaintiff's claims

---

unenforceable. On the sparse record regarding this issue, and given that a buyer's dispute arising out of any contract or any other agreement for a consumer credit transaction secured by a dwelling has also been excluded from arbitration, the Court is unconvinced that the foreclosure provision renders the agreement so one-sided as to be unconscionable.

against CMH Homes and CMHM to arbitration, in accordance with the Arbitration Agreement and after severing the provision requiring Plaintiff to pay the costs of arbitrator compensation. The Court will stay this case until such arbitration has been had in accordance with the terms of the agreement.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration and Stay All Proceedings (**ECF No. 35**) is **GRANTED IN PART** as follows:

1. Any portion of the Arbitration Agreement that mandates cost-sharing of the arbitrator compensation is unconscionable and unenforceable and is **SEVERED** from the Arbitration Agreement.

2. Defendants must bear the costs of arbitrator compensation.

3. Defendants' motion to compel arbitration between Plaintiff and Defendants CMH Homes, Inc., and CMH Manufacturing, Inc., is otherwise **GRANTED.**

4. Plaintiff's claims against CMH Homes, Inc., and CMH Manufacturing, Inc. are **REFERRED** to arbitration in accordance with the remaining provisions of the agreement.

5. This action is **STAYED** pending the conclusion of the arbitration proceedings.

_____

**SENIOR UNITED STATES DISTRICT JUDGE**